## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARCIO SINELLI, Individually
and on behalf of those similarly situated,

      Plaintiffs,

                          Case No.: _____

      v.

MERCEDES-BENZ USA, LLC,
MERCEDES-BENZ U.S. INTERNATIONAL,
INC., DAIMLER NORTH AMERICA
CORPORATION, and MERCEDES-BENZ
GROUP AG,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Marcio Sinelli, Individually and on behalf of all those similarly situated ("the Class"), by and through undersigned counsel, files this Complaint, and alleges against Defendants, Mercedes-Benz USA, LLC, Mercedes-Benz U.S. International, Inc., Daimler North American Corporation, and Daimler AG ("Defendants" or "Mercedes-Benz"), as follows:

### NATURE OF THE ACTION

1.     Mercedes-Benz is one of the world's largest and most well-known manufacturers of luxury automobiles.  While Mercedes-Benz brags of its meticulous and superior German engineering, uses the motto "The Best or Nothing," and boasts of "[c]rafting the world's best vehicles, inside and out,"[1] the reality for its consumers is much different.

---

[1] *The Badge That Built an Industry*, Mercedes-Benz, https://www.mbusa.com/en/best-or-nothing (last visited May 18, 2022).

2.     Mercedes-Benz has exhibited a rather extensive pattern of recalls, including the infamous Takata airbag recall,[2] the Mercedes-Benz electrical grounding recall,[3] the Mercedes-Benz limiter recall, and a prior Mercedes-Benz brake system recall.   In November 2017, Consumer Reports found that of 19 automakers in the United States, Mercedes-Benz appears to be the worst when it comes to fixing recalled vehicles, having fixed only 2% of the vehicles recalled due its use of deadly airbags.[4]   In November 2018, Consumer Reports further reported that United States auto-safety regulators had "launched an investigation into whether Mercedes-Benz has been too slow to disclose safety defects and make needed repairs."[5]

3.     Far from the best, Mercedes-Benz has differentiated itself by its pattern of announcing a recall and then doing barely anything about it.   Its customers are left to fend for themselves with the unsettling knowledge that their vehicles may be highly dangerous.

4.     Most recently, on May 12, 2022, Mercedes-Benz has issued a recall involving the function of certain Mercedes-Benz vehicles' brake boosters.   When exposed to moisture, the brake booster housing corrodes and the function of the brake force is reduced; in cases of severe corrosion, "the connection between brake pedal and brake system would fail" altogether, significantly increasing the risk of a crash or injury.[6]

---

[2]   *Takata Airbag Recall Information and Airbag Availability,* Mercedes-Benz, https://www.mbusa.com/en/recall/takata-recalls (last visited May 18, 2022).

[3] Boyd, K., *Mercedes Recalls GLE-Class SUVs Due to Electrical Ground Issue*, MOTORSAFETY.ORG (Nov. 12, 2020), https://www.motorsafety.org/mercedes-recalls-gle-class-suvs-due-to-electrical-ground-issue/.

[4] Plungis, J., *Many Automakers Too Slow in Fixing Recalled Takata Airbags, Report Says*, CONSUMER REPORTS (Nov. 17, 2017), https://www.consumerreports.org/airbags/automakers-too-slow-in-fixing-recalled-takata-airbags-nhtsa/.

[5] Plungis, J., *Feds Launch Probe into How Mercedes-Benz Handles Recalls*, CONSUMER REPORTS (Oct. 29, 2018), https://www.consumerreports.org/car-recalls-defects/feds-launch-probe-into-how-mercedes-benz-handles-recalls/.

[6] Part 573 Safety Recall Report, NHTSA (May 11, 2022).

5.      Defendants have had actual knowledge of the defect in the brake booster (hereinafter "Brake Defect") since at least June 15, 2009, when Mercedes issued a Technical Service Bulletin ("TSB") to its network of dealers that warned of the dangerous impact corrosion may have on the brake components of the Class Vehicles manufactured to date.  Defendants knew or should have known of the Brake Defect much earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the National Highway Traffic Safety Administration.

6.      Despite having knowledge of the corroding brake boosters, Mercedes-Benz concealed this information, delayed issuing a recall, and still to this day has not sent notification letters to owners of the defective vehicles.

7.      Because of Mercedes-Benz's unfair, misleading, deceptive, and/or fraudulent business practices in failing to disclose the Brake Defect to Plaintiff and putative Class members, owners and lessees of the recalled Mercedes-Benz vehicles have suffered losses in money and property.  Had Plaintiff and the putative Class members known of the safety defect in the brakes, they would not have purchased or leased those vehicles, or would have paid substantially less for them.  In addition, brake failure requires expensive repairs, car rentals, car payments, towing charges, time off work, and other miscellaneous costs.  As a direct result of the Brake Defect and Mercedes-Benz's concealment, owners of the recalled Mercedes-Benz vehicles have a lower market value and are inherently worth less than they otherwise would be.

8.      Plaintiff therefore brings this class action on behalf of himself, and all persons similarly situated who have purchased or leased the following Mercedes-Benz vehicles: Model Year 2006–2012 ML-SUVs, Model Year 2006–2012 GL-SUVs, and Model Year 2006–2012 R-class SUVs (hereinafter referred to as the "Class Vehicles") to redress Defendants' misconduct.

Plaintiff and the Class seek recovery of damages and repair under state consumer-protection statutes and express and implied warranties, as well as reimbursement of related expenses and diminished value of the Class Vehicles.

**PARTIES, JURISDICTION, AND VENUE**

9.      Plaintiff, Marcio Sinelli, is a resident and citizen of Orange County, Florida. Plaintiff is the owner of a 2007 Mercedes-Benz ML Class (VIN #4JGBB86E57A294421) as well as a 2012 Mercedes-Benz ML Class (VIN #4JGDA5HB1CA053088)—both of which have the Brake Defect.  Through Plaintiff's exposure to Mercedes-Benz, he was aware of Mercedes-Benz's uniform and pervasive marketing messages of superior German engineering, dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased Mercedes-Benz ML Class vehicles.  Despite touting the engineering, dependability, and safety of Mercedes-Benz vehicles, at no point did Mercedes-Benz or their agents, dealers, or other representatives disclose the brake booster defect to Plaintiff.   Now that MBUSA has issued a "Stop Drive Notice," Plaintiff is left without a vehicle to drive at all.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Brake Defect.

10.      Defendant Mercedes-Benz USA, LLC ("MBUSA") is a limited liability company organized under the laws of Delaware, with its principal place of business at 1 Mercedes-Benz Drive, Sandy Springs, GA 30328.   MBUSA is responsible for the advertising, marketing, distribution, and sale of Mercedes-Benz vehicles in the United States.

11.      Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI") is a corporation organized under the laws of Delaware, with its principal place of business at 1 Mercedes Drive, Vance AL 35490.  MBUSI is the plant responsible for producing and manufacturing Mercedes-Benz SUVs such as the GL and ML in the United States.

12.    Defendant Daimler North America Corporation ("DNAC") is a corporation organized under the laws of Delaware, with its principal place of business at One Mercedes Drive, Montvale, NJ 07645.  DNAC operates as a holding company for Mercedes-Benz.

13.    Defendant Mercedes-Benz Group AG (formerly Daimler AG)[7] ("MBGAG") is a stock company organized under the laws of Germany, with its principal place of business at Mercedesstr 137, 70327 Stuttgart, Germany.  MBGAG is responsible for the design, development, testing, and manufacture of Mercedes-Benz vehicles and is home to Mercedes-Benz's main production facilities.

14.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 members of the Class.  Members of the Class are citizens of states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen.  This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction.

15.    This Court has personal jurisdiction over Defendants because they intentionally avail themselves of the rights and privileges of conducting business in the State of Florida where members of the Class reside, and they have continuous and systematic contacts with Florida and those other states, owing to Defendants' advertising and sales targeting citizens in all fifty states, the District of Columbia, and U.S. territories.

---

[7] During the manufacture, testing, and sale of the Class Vehicles, MBGAG operated under the name "Daimler AG").

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein occurred within the Middle District of Florida.  Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous Mercedes-Benz dealers doing business in this District.  Defendants' actions have caused harm to hundreds of members of the Class residing in Florida, including Plaintiff Marcio Sinelli.

## GENERAL FACTUAL ALLEGATIONS

**A.  <u>Mercedes-Benz Marketed the Class Vehicles as Safe and Engineered to Make Accidents Less Severe, Less Damaging, and Even Less Likely</u>.**

17.     Mercedes-Benz sells millions of cars throughout the United States.  In 2021 alone, Mercedes-Benz sold more than 300,000 vehicles in the United States.[8]

18.     Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

19.     Mercedes-Benz marketed, distributed, and warranted the Class Vehicles in the United States in a uniform manner.

20.     Throughout the years, and at all times relevant to this action, Mercedes-Benz has marketed the Class Vehicles as having the highest quality, being the most durable, and maintaining the best resale value of any vehicles on the road.  Mercedes-Benz uses tag lines such as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," and encourages consumers to buy "the best" vehicle on the market (i.e., a Mercedes-Benz).

---

[8] *2021 (Full Year) USA: Mercedes-Benz Car Sales by Model*, CARE SALE STATISTICS (Jan. 8, 2022), https://www.best-selling-cars.com/usa/2021-full-year-usa-mercedes-benz-car-sales-by-model/.

21.    Mercedes-Benz uses the motto "The Best or Nothing" when advertising its cars. On the Mercedes-Benz website, the automaker declares its promise to deliver "The Best or Nothing."[9]  Mercedes-Benz also promises its cars will be "Fun to drive; A Pleasure to own."

22.    In a Press Release discussing the company's new slogan, Joachim Schmidt, executive vice president-sales and marketing for the brand said the automaker has a long history of bringing new technology innovations to market—"Based on this tradition, our customers expect nothing less than technological leadership."  "For us, that means we want to deliver the very best in all areas – be that in research and development, production, sales, service and aftermarket business or in purchasing."[10]

23.    Mercedes-Benz further boasts that its vehicles provide "[l]uxury through peace of mind," recognizing that "[t]o deliver the best or nothing, safety must come first."  The website further avows that "every Mercedes-Benz is engineered to make an accident less severe, less damaging, and even less likely."[11]



## Luxury through peace of mind.

To deliver the best or nothing, safety must come first. It's why we devote so much time to a moment we hope never happens, and why every Mercedes-Benz is engineered to make an accident less severe, less damaging, and even less likely.

[9]    *A History of Making History*, Mercedes-Benz: The Best or Nothing, https://www.mbusa.com/en/best-or-nothing/innovation (last visited May 18, 2022).
[10]    Garlitos, K., *Mercedes to Come Out with New Company Slogan*, Top Speed (June 14, 2010), https://www.topspeed.com/cars/car-news/mercedes-to-come-out-with-new-company-slogan-ar91849.html.
[11]    *Safety: Luxury Through Peace of Mind*, Mercedes-Benz: The Best or Nothing, https://www.mbusa.com/en/best-or-nothing/safety (last visited May 18, 2022).

24.     Plaintiff and the Class cannot now receive the benefit of the bargain—that Mercedes-Benz class vehicles are fun to drive, a pleasure to own, and they certainly have not lived up to their promise of being the best in safety, production, service, among other false promises. Rather than making accidents "less severe, less damaging, and … less likely," Plaintiff and the Class are at an increased risk for crash and injury.  And given Mercedes-Benz's established record of not fulfilling its obligations in serious recalls, Plaintiff and the Class are left to worry what the true intent is of Defendants in maintaining safe vehicles.

25.     In a 2012 Mercedes-Benz M-Class vehicle brochure, the company advertised the safe and innovative braking system of the vehicles, stating its M-Class vehicles had "[a]n integrated system of braking advances helps to make driving more reassuring and relaxing in a variety of situations."  The recent recall belies this marketing claim.



26.     Defendants' brochures for other Class Vehicles make similar claims regarding, safety, reliability, durability, and performance of their vehicles.

27.     Mercedes-Benz developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Vehicles.

28.     In contrast to Mercedes-Benz's marketing campaign, the Class Vehicles are equipped with braking systems that may fail and result in partial or total loss of braking capability, creating an inherently dangerous safety risk with potentially disastrous consequences for Plaintiffs and members of the Class.  Defendants knew or should have known of the Brake Defect but failed to rectify it.

**B.  The Brake Defect.**

29.     The ability of a vehicle to stop when the driver pushes on the brake pedal is a vehicle's paramount safety feature.

30.     The Class Vehicles—like all other cars—are equipped with a brake system. Typically, the brake system is comprised of a brake pedal, a brake pad, a brake caliper, hydraulic brake fluid, a master cylinder, and a brake booster.

31.     The brake booster consists of a rod that gets pushed into a housing which contains two springs and an air filter.

32.     The function of the brake booster is to transfer and amplify the force the driver's foot applies to the brake pedal, when pressed, to the master cylinder.  The brake booster often adds 200 to 300 pounds of force to the master cylinder.  The master cylinder then converts that force to hydraulic pressure which engages the brake caliper and is used by the brake pads to generate friction and slow the wheels of the car to a stop.

33.     Without a brake booster, drivers would have to press down on the brakes much harder and stopping distances would significantly increase.

34.     On May 11, 2022, the National Highway Traffic Safety Administration ("NHTSA"), issued a Part 573 Safety Recall Report ("Recall Report") documenting the recalled vehicles models, the number of potentially involved vehicles, a description of the defect and safety

risk, a description of the cause of defect, a description of the remedy offered by Mercedes-Benz, and a recall schedule.[12]

35.    According to the NHTSA's Recall Report, the total number of Mercedes-Benz vehicles potentially involved was 292,287.  The Recall Report further indicated that the estimated percentage of vehicles with the defect was 100%.[13]

36.    The Recall Report states that Defendant MBAG determined that "the function of the brake booster [in the Class Vehicles] might be affected due to advanced corrosion in the joint area of its housing."  The Recall Report explains that the Brake Defect is caused by "[m]oisture [which] may wick under a rubber sleeve that is installed around the brake booster housing for aesthetic reasons.  This might result in corrosion in the joint area of the brake booster housing."[14]

37.    According to the Recall Report, the safety risk created by the Brake Defect is as follows:

> After extended time in the field and in conjunction with water exposure, the corrosion might lead to a leakage of the brake booster.  Leakage in the brake booster could lead to reduced braking power and an increase in the brake pedal forces required to slow the vehicle and/or to potentially increased stopping distances.

> Additionally, in rare cases of very severe corrosion, a particularly strong or hard braking maneuver could cause mechanical damage in the brake booster, whereby **the connection between the brake pedal and brake system would fail.  In such a rare case, it would not be possible to slow or stop the vehicle via the service brake.  Thus, the risk of a crash or injury would be increased**.[15]

38.    While consumers of the Mercedes-Benz Class Vehicles appreciate aesthetics, they certainly did not believe safety would be comprised for "aesthetic reasons."

---

[12] *See supra* note 6.
[13] *Id.*
[14] *Id.*
[15] *Id.* (emphasis added).

39.    The Recall Report further explained that "[b]efore the issue occurs, the driver might notice a change in the brake pedal feel and/or hissing/airflow noises when applying the brake pedal."

40.    As a remedy, the Recall Report indicates that "[a]n authorized Mercedes-Benz dealer will remove the rubber sleeve and inspect the brake booster housing on the affected vehicles. Vehicles that do not exhibit advanced corrosion may continue to be driven with no further action. Vehicles that show advanced corrosion will have an additional test performed to ensure the functionality of the brake booster.  Vehicles that pass the additional test may be driven for up to two years but must return for an additional repair.  Vehicles that do not pass the additional test will require a brake booster replacement."[16]

41.    MBUSA plans to issue a "Stop-Drive Notice" and notify all owners of the defective vehicles of the recall "on or before May 27, 2022."[17]

42.    In the meantime, MBUSA is advising affected customers to stop driving their vehicles altogether until the brake booster can be replaced or repaired.[18]

43.    The NHTSA Recall Report advises that "[i]n the event a repair is necessary and cannot be carried out immediately, an authorized Mercedes-Benz dealer will help coordinate an individual solution for the customer, including alternate mobility.  Pursuant to 49 C.F.R. § 577.11, MBUSA plans to provide notice about prenotice reimbursement to owners since some of the involved vehicles could have been previously subject to the condition described."[19]

---

[16] *Id.*

[17] *Id.*

[18] Valdes-Dapena, P., *Mercedes Issues 'Do Not Drive' Advisory for 292,000 SUVs*, CNN BUSINESS (May 12, 2022), https://www.cnn.com/2022/05/12/business/mercedes-suv-recall/index.html; The Associated Press, *Mercedes Tells Owners of 292K Vehicles to Stop Driving Them*, ABC NEWS (May 12, 2022), https://abcnews.go.com/US/wireStory/mercedes-recalls-292k-vehicles-fix-problem-brakes-84669486.

[19] *See supra* note 6.

44.    The NHTSA database page related to the Class Vehicles warns users of the following:



## URGENT: DO NOT DRIVE THIS VEHICLE

An urgent safety recall has been issued for this vehicle. Use our VIN lookup tool to see if your vehicle is part of this recall.

If your vehicle is part of this recall, the manufacturer has recommended that **you stop driving this vehicle immediately.**

More information is available under
- NHTSA Recall Number 22V315000.

**C.    NHTSA Complaints Evidence the Brake Defect in Class Vehicles Going Back as Far as 2007.**

45.    All vehicle manufacturers, including Defendants, are required by law (backed by criminal penalties) to routinely monitor and analyze NHTSA complaints to determine whether vehicles or automotive components should be recalled due to safety concerns.  Thus, Defendants have knowledge of all NHTSA complaints.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

46.    Federal regulations also require manufacturers like Mercedes-Benz to comply with Early Warning requirements.  "One of the EWR requirements is that all manufacturers of motor vehicles or motor vehicle equipment, including low volume and child restraints, submit to NHTSA copies of their manufacturer communications. Manufacturers should submit all notices, bulletins, and other communications including warranty and policy extensions and product improvement communication sent to dealers, distributors, owners, purchasers, lessors, or lessees regarding any

defect, failure or malfunction beyond normal deterioration in use, failure of performance, flaw or other unintended deviation from design specifications whether it is safety-related or not."[20]

47. Complaints submitted to the NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal a number of brake failures consistent with the defects and safety risks outlined in the NHTSA Recall Report.

48. Reproduced below is a representative sampling,[21] dating back as far back as 2007, of the NHTSA complaints which are consistent with the defects and safety risks outlined in the NHTSA Recall Report and relate to Class Vehicles:[22]

**2007 Mercedes-Benz GL450 – September 13, 2007**
**NHTSA ID Number**: 10202934
**Incident Date**: January 2, 2007
**Consumer Location**: SAN JOSE, CA
**Vehicle Identification Number**: 4JGBF71E77A\*\*\*\*
**Summary of Complaint**: TL\*THE CONTACT OWNS A 2007 MERCEDES BENZ GL450. THE CONTACT HEARD A SQUEAKING NOISE WHEN HE DEPRESSED THE BRAKE PEDAL AND THE STOPPING DISTANCE INCREASED. THE DEALER WAS UNABLE TO DIAGNOSE THE CAUSE OF FAILURE, HOWEVER, THEY GRINDED THE EDGES OF THE BRAKE PADS TO REDUCETHE SQUEAKING NOISE. THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 4,000 AND CURRENT MILEAGE WAS 6,600. THE DEALER RECOMMENDED CHAMFERING THE BRAKE PADS TO ALLEVIATE THE NOISE. THE DEALER STATED VEHICLE LOW ON OIL. UPDATED 09/2807 \*TR

**2007 Mercedes-Benz GL450 – March 12, 2008**
**NHTSA ID Number**: 10220937
**Incident Date**: February 18, 2008
**Consumer Location**: SACRAMENTO, CA
**Vehicle Identification Number**: 4JGBF71E07A\*\*\*\*
**Summary of Complaint**: ON FEBRUARY 18, 2008 AT APPROXIMATELY 3:30 PM I WAS INVOLVED IN AN MVA IN WHICH I STRUCK THE CAR IN FRONT OF ME AT CONSIDERABLE SPEED. THIS CAUSED

---

[20] *See Manufacturer Communications*, NHTSA https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications (last visited May 17, 2022).
[21] *See generally Safety Issues and Recalls*, NHTSA, https://www.nhtsa.gov/recalls (last visited May 18, 2022).
[22] These complaints are reproduced literatim. Typos and misspellings are in the originals.

CONSIDERABLE DAMAGE TO MY CAR (2007 MERCEDES GL450) WITH NO AIR BAG DEPLOYMENT. DURING THE ATTEMPT AT STOPPING I FELT THE BRAKE PEDAL BECOME MUSHY AND BE INEFFECTIVE. AT FIRST THE BRAKES GRABBED STRONG AND THEN LET LOOSE WITH THE EVENTUAL COLLISION. AFTER CONSULTING WITH AN INDEPENDENT MERCEDES MECHANIC, IT WAS SUGGESTED THAT THIS BRAKE BEHAVIOR COULD BE EXPLAINED BY AN ANTI-LOCKING BRAKE (ABS) SENSOR FAILURE. THIS WOULD ACCOUNT FOR THE RELEASE OF THE BRAKES (POSSIBLE DETECTION OF SKID) BUT ALSO THE FALSE DATA REACHING THE CENTRAL COMPUTER WITH AN ERRONEOUS SPEED, THUS DISABLING THE AIRBAGS. I HAVE BEEN IN CONTACT WITH MERCEDES BENZ OR NORTH AMERICA WHICH HAS YIELDED NO INSPECTION OR RESOLUTION. I HAVE BEEN ASKING FOR ONE OF THEIR FIELD ENGINEERS TO EXAMINE THE CAR AND SEE IF THE ABS SENSOR IS RESPONSIBLE FOR THE POSSIBLE BRAKE FAILURE. ALTHOUGH THE CRASH MAY STILL BE MY DRIVER ERROR, I DON'T FEEL COMFORTABLE REPAIRING THE CAR AND GIVING IT BACK TO MY WIFE FOR TRANSPORTATION OF THE FAMILY. HAS AN ABS SENSOR FAILURE BEEN REPORTED FOR THIS MODEL BEFORE? *TR

**2008 Mercedes-Benz ML-Class Complaint – March 27, 2009**
**NHTSA ID Number**: 10263214
**Incident Date**: March 21, 2009
**Consumer Location**: DARIEN, CT
**Vehicle Identification Number**: 4JGBB86E38A****
**Summary of Complaint**: IT WAS 6:30 IN THE MORNING AND I WAS PULLING INTO MY GYM'S PARKING LOT. AS I ATTEMPTED TO BRAKE, THE CAR CONTINUED TO ACCELERATE. I KEPT PUMPING ON THE BRAKE ONLY TO HAVE THE CAR MAKE A GRINDING SOUND AS IT CONTINUED TO ACCELERATE (AS IF IT WERE RESISTING MY ATTEMPTS TO STOP IT). EVENTUALLY, AND THANKFULLY BEFORE IT HIT THE BUILDING, THE CAR STALLED TO A STOP. THE CAR ACTUALLY ASCENDED 3 WOODEN PORCH STEPS AND HIT INTO A WOODEN PORCH COLUMN BEFORE STOPPING. IT WAS A VERY EARLY SATURDAY MORNING. HAD I PULLED INTO THIS DRIVEWAY MID MORNING, ON THIS SATURDAY (A TIME WHEN THIS GYM IS ESPECIALLY ACTIVE), I COULD VERY WELL HAVE KILLED SOMEBODY. ON THE DAY OF THE INCIDENT, THE CAR WAS TOWED TO MERCEDES BENZ OF GREENWICH, CONNECTICUT. AT THE TIME, I WAS GIVEN A LOANER CAR TO DRIVE (AT NO EXPENSE TO ME). I HAVE BEEN TOLD THAT A CASE HAS BEEN ESTABLISHED TO INVESTIGATE THE INCIDENT. AFTER A WEEK'S TIME, I CONTACTED MERCEDES BENZ (800-367-6372 X6302 JUSTIN) IN AN EFFORT TO ASCERTAIN THE STATUS OF THIS INVESTIGATION. I COULD NOT GET A DIRECT

ANSWER OF ANY KIND FROM THE GENTLEMAN THAT I SPOKE TO. MERCEDES BENZ'S LACK OF COMMUNICATION HAS BEEN VERY DISTURBING GIVEN THE SEVERITY OF THIS SITUATION. THIS IS A LEASED CAR WHICH I HAVE HAD FOR A LITTLE OVER 1 YEAR. WITHOUT ANY KIND OF EXPLANATION FROM MB AS TO WHY THIS HAPPENED, I DON'T THINK I WOULD STEP INTO THIS CAR IF AND WHEN IT WAS REPAIRED. I WOULD APPRECIATE ANY INTERVENTION YOUR DEPARTMENT IS PREPARED TO PUT FORTH ON MY BEHALF HERE THANK YOU. *TR

**2007 Mercedes-Benz R350 Complaint – August 10, 2010**
**NHTSA ID Number**: 10346893
**Incident Date**: July 10, 2010
**Consumer Location**: POMONA, CA
**Vehicle Identification Number**: 4JGCB65E86A****
**Summary of Complaint**: I DROVE UP A 6000' HIGH MOUNTAIN,PULLED OVER ONTO A WIDE FLAT PULLOFF SAT THERE FOR 20 MINUTES, THEN RESTARTED THE CAR AND HAD NO BRAKES. MY FOOT WENT TO THE FLOOR. I HAD NOT USED THE BRAKES ON THE WAY UP THE MOUNTAIN BECAUSE THE ROAD WAS STEEPLY UPHILL. I TRIED TURNING THE CAR ON AND OFF SEVERAL TIMES AND STILL NO BRAKES. I WAITED ABOUT 20 MINUTE AND TRIED AGAIN,STILL HAD NO BRAKES. THERE WERE 3 OF US IN THE CAR, AND WE MANAGED TO GET A RIDE SEVERAL MILES DOWN AND CALLED A TOW TRUCK. I T TOOK ABOUT 4 HOURS FOR THEM TO ARRIVE.I TRIED THE BRAKES AGAIN, AND STILL HAD NONE. AFTER IT WAS TOWED TO A REPAIR SHOP, APPROXIMATELY 5 HOURS AFTER THE INITIAL PROBLEM, I STILL HAD NO BRAKES. THIS HAPPENED ON A SATURDAY NIGHT. ON MONDAY, THE BRAKES HAD PUMPED BACK UP. I HAD IT TOWED TO PENSKE MERCEDES DEALERSHIP. THEY TESTED- BRAKES,FLUIDS ETC. AND COULD FIND NO PROBLEM. THEY BALKED AT DRIVING IT UP THE MOUNTAIN, BUT FINALLY SAID THEY DID DO IT, AND THE BRAKES WERE FINE. THIS ALL HAPPENED OVER 3 WEEKS AGO. I HAVE SPOKEN WITH 3 LEVELS OF AUTHORITY AT THE DEALER, AND THEY INSIST THERE IS NO PROBLEM, AND I SHOULD PICK THE CAR UP OR HAVE IT TOWED AWAY, OR PAY THEM A $25 PER DAY STORAGE FEE. I ALSO CALLED THE 800 NUMBER FOR MB  CORPORATE, AND HAVE NEVER RECEIVED   A   CALL  BACK. THE DEALER SAID THEY WERE CONTACTED BY CORPORATE MB AND TOLD WHICH TESTS TO PERFORM, AND THEY TOLD THEM THEY HAD ALREADY DONE THOSE SAME TESTS AND THE CAR PASSED THEM ALL. MERCEDES CORPORATE THEN TOLD THEM TO TELL ME THE CAR WAS FINE. AND I SHOULD PICK IT UP. THIS IS THE SECOND TIME I'VE HAD THE SAME FAILURE, ALSO AT THE SAME ALTITUDE;HOWEVER THE FIRST TIME, AFTER TURNING THE CAR OFF FOR A FEW MINUTES, THE BRAKES

WERE BACK UP AND USABLE. JUST BECAUSE THE CAR PASSES THEIR TESTS DOES NOT MEAN THERE IS NO PROBLEM-IT SIMPLY MEANS THEY HAVE NO TEST CAPABLE OF DISCOVERING THE CAUSE. MUST I DIE BEFORE THEY REPAIR THE CAR? I WAS GOING TO MAKE U-TURN AT THE PULL-OFF. WE'RE ALIVE BECAUSE I DIDN'T GET THAT FAR. *TR

**2008 Mercedes-Benz GL-Class Complaint – April 3, 2012**
**NHTSA ID Number**: 10454010
**Incident Date**: March 21, 2012
**Consumer Location**: CHARLOTTE, NC
**Vehicle Identification Number**: 4JGBF71E88A****
**Summary of Complaint**: I CAME OUT OF THE SHOPPING MAUL INTO THE PARKING LOT, ENTERED INTO THE CAR AND PUT IT IN REVERSE. THEN L PRESSED THE BRAKES TO STOP THE VEHICLE AND GO FORWARD, BUT THE BRAKES WOULD NOT STOP THE CAR. THE CAR KEPT GOING BACKWARDS AND L KEPT PRESSING THE BRAKES WITHOUT ANY RESULT. THE CAR SMASHED INTO 4 PARKED VEHICLES AND STILL DID NOT STOP. I ATTEMPTED TO PUT IT IN NEUTRAL TO STOP IT OR SLOW IT DOWN, BUT FINALLY THE CAR STARTED GOING FORWARD AND L PRESSED THE BRAKES MULTIPLE TIMES, BUT THE CAR STILL DID NOT RESPOND AND KEPT GOING FORWARD AND SKIDDING AND EVENTUALLY SMASHED INTO A TREE AND STOPPED. L HAVE CONTACTED MERCEDES, BUT THEY ARE YET ACT. THE CAR POWER STEERING WENT OUT 3 DAYS BEFORE THE ACCIDENT AND WAS JUST REPLACED THE DAY BEFORE THE ACCIDENT. THERE HAVE BEEN SEVERAL COMPLAINTS WITH THIS MODEL AND RECALL ON THE POWER STEERING. I HAVE INCURRED OVER 35,000 DOLLAR DAMAGE TO THE VEHICLE AND OTHER VEHICLES AND NEED MERCEDES BENZ TO STEP UP AND FIGURE OUT WHY THE CAR KEPT ACCELERATING DESPITE MY APPLYING THE BRAKES. *TR

**2007 Mercedes-Benz ML-Class Complaint – November 10, 2016**
**NHTSA ID Number**: 10925447
**Incident Date**: November 10, 2016
**Consumer Location**: VALLEJO, CA
**Vehicle Identification Number**: 4JBB86E87A****
**Summary of Complaint**: REVERSE PULLING OUT OF DRIVEWAY AT SLOW SPEED THEN STOPPED. ON DRIVE POSITION, VEHICLE JERKED FORWARD WHEN GAS PEDAL WAS APPLIED. THIS HAPPENED TWICE AT SAME SITUATION ABOUT SAME TIME.THEN AT THE FREEWAY, IN STOP AND GO TRAFFIC VEHICLE BRAKES FAILED AND HIT A BIG-RIG TRUCK. NO WARNING LIGHT THAT CAME ON. I PRESSED FOOT PEDAL

HARD BUT VEHICLE DID NOT STOP AND CONTINUED ROLLING UNTIL IT REAR ENDED THE TRUCK. LUCKILY OUR SPEED WAS 0-5 MPH AND NO INJURY TO MY 2 PASSENGERS. CHP ASSISTED US. VEHICLE WAS NORMAL WHEN PULLED OVER TO THE SHOULDER. I HAD IT TOWED TO NEAREST MERCEDES BENZ DEALERSHIP. PER SERVICE MINDER, VEHICLE UNDERGO REGULAR MAINTENANCE AND IS SERVICED BY SAME DEALERSHIP.

**2010 Mercedes-Benz ML350 Complaint – September 26, 2017**
**NHTSA ID Number**: 11029894
**Incident Date**: September 26, 2017
**Consumer Location**: BRONXVILLE, NY
**Vehicle Identification Number**: N/A
**Summary of Complaint**: TWO ISSUES WITH MY ML350 2010 CAR - 1) ELECTRICAL - GAS GAUGE WENT TO ZERO WHILE DRIVING EVEN WHEN CAR WAS THREE QUARTERS FULL OF GAS. AFTER I STOPPED CAR AND RESTARTED ENGINE, GAS GAUGE WENT IMMEDIATELY BACK UP TO THREE QUARTERS FULL. 2) FAILED BRAKES - I WAS DRIVING INTO A PARKING SPOT SLOWLY USING BRAKES AND WHEN I WAS ABOUT TO COME TO A FULL STOP, THE BRAKES FAILED AND WOULDN'T STOP THE CAR COMPLETELY RESULTING IN ME DRIVING OVER A PARKING METER. IT FELT LIKE THE CAR ACCELERATED AS WELL AFTER HITTING PARKING METER BUT I WAS ABLE TO STOP CAR AFTER PRESSING ON THE BRAKES AGAIN. THANKFULLY NO ONE WAS HURT GIVEN SLOW SPEED AND NO ONE BEING ON SIDEWALK AT THE TIME.

**2010 Mercedes-Benz GL450 Complaint – January 28, 2019**
**NHTSA ID Number**: 11172611
**Incident Date**: January 25, 2019
**Consumer Location**: RIVERDALE, GA
**Vehicle Identification Number**: 4JGBF7BE2AA****
**Summary of Complaint**: TL* THE CONTACT OWNED A 2010 MERCEDES-BENZ GL450. WHILE THE CONTACT'S BROTHER WAS DRIVING DOWN A HILL, THE BRAKE PEDAL BECAME STUCK AND THE VEHICLE WOULD NOT STOP. THE VEHICLE DROVE UPHILL AND BECAME AIRBORNE. AS A RESULT, THE VEHICLE CRASHED INTO THE SIDE OF A NEIGHBOR'S HOUSE. THE AIR BAGS DEPLOYED. THE CONTACT'S BROTHER WAS INJURED AND RECEIVED MEDICAL ATTENTION. THE OCCUPANTS OF THE HOUSE WERE NOT INJURED. THE CONTACT WAS UNSURE IF A POLICE REPORT WAS FILED. THE VEHICLE WAS DEEMED TOTALED BY THE CONTACT'S INSURANCE COMPANY. THE VEHICLE WAS TOWED. THE MANUFACTURER WAS NOTIFIED AND PERFORMED AN INVESTIGATION. THE MANUFACTURER STATED THAT THE

VEHICLE WAS FINE AND SHOULD NOT HAVE FAILED IN THAT MANNER. THE DEALER WAS NOT NOTIFIED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS 135,000.

**2006 Mercedes-Benz R350 Complaint – February 15, 2019**
**NHTSA ID Number**: 11180304
**Incident Date**: January 16, 2019
**Consumer Location**: Unknown
**Vehicle Identification Number**: 4JGCB65EX6A\*\*\*\*
**Summary of Complaint**: MERCEDES 2006 WHEN I BRAKE THE CAR WILL KEEP GOING. SUDDEN ACCELERATION. THIS HAS HAPPEN TWICE AND I HAVE NOT OWNED THE CAR FOR A YEAR. I COULD KILL SOMEONE. TOOK IT TO DEALER AND THREE DIFFERENT SHOPS AND NO ONE KNOWS WHAT I'M TALKING ABOUT HELP

**2009 Mercedes-Benz ML-Class Complaint – March 3, 2021**
**NHTSA ID Number**: 11399047
**Incident Date**: July 24, 2020
**Consumer Location**: BRADENTON, FL
**Vehicle Identification Number**: 4JGBB77EX9A\*\*\*\*
**Summary of Complaint**: LOSS OF ALL BRAKES DIAGNOSE CORRODED/RUSTED BRAKE PIPE AT CENTER LEFT OF VEHICLE

49.    Mercedes-Bez even submitted at least one Manufacturer Communication to NHTSA, NHTSA ID Number: 10030929, involving the 2007 Mercedes-Benz ML-Class on or around June 15, 2009.

50.    On or around June 15, 2009, Mercedes informed dealerships that "corrosion protection coatings for brake components and hardware may be damaged and or stripped away if highly concentrated acid-based cleaners are used. Once the corrosion protection is damaged or removed the brake components and or hardware can begin to corrode. Include all models and model years." Accordingly, Defendants were aware of the partial or total loss of braking ability should the brake components begin to corrode.

51. On the basis of that communication, Defendants either knew or should have known of the corrosive effect that moisture would have should it accumulate and cause corrosion in the brake booster housing unit in the Class Vehicles.

52. Plaintiff and members of the Class were never provided with copies of or information about this official communication with NHTSA as required by Early Warning Reporting requirements. Defendants failed to disclose the Brake Defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Class, and instead, intentionally concealed the Brake Defect.

### D. Despite Knowledge of the Brake Defect, Defendants Continued to Market the Class Vehicles as Safe and Reliable.

53. It was not until July 2021 that Defendant MBAG launched initial investigations based upon a field report describing instances in which a customer experienced a reduced brake force support. MBAG requested the parts from the affected vehicle for analysis. Following this analysis, MBAG determined that the function of the brake booster was impaired and observed corrosion of the brake booster housing.[23]

54. In August 2021, MBAG conducted additional analyses regarding the potential failure mechanism, root cause, and potential consequences of the Brake Defect. These analyses included investigations of parts procured from used parts suppliers, corrosion tests and functional tests of the brake booster in order to study the influence of continuous corrosion to the mechanical integrity and function of the brake booster. *Id.*

55. In September 2021, MBAG initiated a field study to analyze the level of corrosion on the brake booster housings in vehicles from different counties and regions. *Id.* In the following

---

[23] *Mercedes-Benz Part 573 Submission: Chronology of Defect / Noncompliance Determination* (May 9, 2022), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V315-4181.pdf.

months—November and December of 2021—MBAG continued to investigate the mechanisms leading to the corrosion and the impact of the corrosion on the functionality of the brake booster. *Id.*

56.    By January 2022, potentially affected vehicles were determined based on production records and information on the development of the fleet in operation.  *Id.*

57.    It was not until March 2022 that the field study results were evaluated, and risk evaluations were prepared.  At this time, Mercedes-Benz claimed to have identified only one case in the United States where poor brake performance was caused by a corroded brake booster.  *Id.*

58.    On May 2, 2022—almost one year after MBAG initially determined that the function of the brake booster was impaired and observed corrosion of the brake booster housing— MBAG finally made the decision to conduct a recall with respect to Mercedes-Benz ML-, GL-, and R-Class SUVs.  *Id.*

59.    MBUSA contacted the National Highway Traffic Safety Administration on May 5, 2022 to inform of the safety recall, stop-drive instructions and inform that communications with owners would begin May 27, 2022.  *Id.*

60.    This Recall is untimely and ineffective at remedying the significant losses, which Plaintiff and the Class have suffered.  Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs.  They did so at the expense of Plaintiff and the Class.

61.    Defendants failed to inform Class Vehicle owners and lessees at the point of sale and before purchase or lease of the Class Vehicles of the Brake Defect and that it would not be

replaced in the event of failure. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Brake Defect in the Class Vehicles.

62.     Defendants had actual knowledge that Class Vehicles were experiencing braking failures due to the Brake Defect. Despite this knowledge, Defendants continued to sell Class Vehicles with the Brake Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiff and members of the Class.

63.     Plaintiff and Class members did not possess sufficient technical expertise to recognize symptoms of the Brake Defect. This information, however, was well known to Defendants, but not revealed.

64.     Reasonable consumers, including Plaintiff and members of the Class, would find disclosure of the Brake Defect to be material.

65.     Defendants concealed the Brake Defect from Plaintiff and all Class Vehicle purchasers and lessees. Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Brake Defect that would cause the braking systems to fail.

66.     Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Brake Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

67.     Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Brake Defect, to deceive purchasers and lessees as described herein. At the time of purchase or lease, Defendants fraudulently omitted to disclose material matters regarding the Brake Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability. Defendants

fraudulently concealed from Plaintiff and members of the Class concerning the Brake Defect in Class Vehicles even though Defendants knew or should have known that information concerning the Brake Defect was material and central to the marketing, sale, and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiff and members of the Class.

68.     If Plaintiff and members of the Class had been informed of the Brake Defect in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or paid substantially less.  If Plaintiff and members of the Class had learned of the Brake Defect in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles. Defendants' conduct that violated the consumer fraud statutes alleged below deprived Plaintiffs and members of the Class of that remedy.

69.     As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

**E.** **Prior Concerns with Mercedes-Benz Compliance with Federal Laws and Regulations Applicable to Safety Recalls.**

70.     Mercedes-Benz has exhibited a rather extensive pattern of recalls.  Beginning in 2013, Mercedes-Benz (along with other auto manufacturers) fell subject to the largest recall in automotive history—the Takata airbag recall.  The airbags had an unfortunate habit of violently exploding, often propelling metal shrapnel into the driver and any passengers inside the vehicle. As a result of the defective airbags, Mercedes-Benz recalled almost one million vehicles in total. Following the Takata recall, Mercedes-Benz's reputation plummeted after numerous lawsuits

alleged that not only was Mercedes-Benz slow to react to and fix the problem in its vehicles, but actually helped create it in the first place by being "intimately involved" in the design and testing of the airbags.

71.    In 2017, Mercedes-Benz was forced to recall over 350,000 vehicles from 2015, 2016, and 2017 model years upon learning that the vehicles were bursting into flames. The problem was the vehicles' limiter, which is used to prevent fuse overloads and protect other component parts from damage. During testing, it was found that if the stater was blocked due to engine transmission damage, a very high electrical current would flow through the limiter when the driver tried to start up. This would prevent the car from starting but if the driver continued to try, the electric current could overheat the limiter, melt component part, and in certain situations, cause the vehicle to catch fire.

72.    In 2017, Mercedes-Benz also issued a recall for certain 2015, 2016, and 2017 model year vehicles due to a faulty electronic stability program in the brake system. This caused the brakes to malfunction, smoke, and in some cases, cause a fire. Mercedes-Benz first suspected a problem in 2016, but did not issue a recall until sometime 2017.

73.    In 2017, Mercedes-Benz also issued a recall for incorrectly installed electrical grounding, which could cause all of the vehicles' components to malfunction—increasing the risk of a crash. More specifically, the issue could cause power steering system failure (causing the driver to lose control of the vehicle), a loss of wiper power (obstructing the driver's view in heavy snow or rain), and loss of headlight (giving the driver limited visibility at night). As part of the recall, Mercedes-Benz promised to replace the faulty parts. However, in 2018, Mercedes-Benz would not provide its customers a remedy because it lacked the parts and ability to do so.

74.    A November 2017 Consumer Reports article found that of 19 automakers in the United States, Mercedes-Benz appears to be the worst when it comes to fixing recalled vehicles, having fixed only 2% of the vehicles recalled due its use of deadly airbags.

75.    In fact, Mercedes-Benz recall track record has been so poor that United States auto-safety regulators launched an investigation into whether Mercedes-Benz has been too slow to disclose safety defects and make needed repairs.

76.    On October 22, 2018, Stephen Ridella, Ph.D., Director of the Office of Defects Investigation Enforcement at the NHTSA sent MBUSA a letter notifying that NHSTA had opened an Audit Query "to investigate concerns with [MBUSA's] compliance with federal laws and regulations applicable to safety recalls."[24]   The letter further documented:

> [NTHSA Recall Management Division]'s review of MBUSA's administration revealed **numerous issues with timely notification to owners and purchasers, as well as timely submission of representative copies of communications to NHTSA**. Additionally, MBUSA has frequently been unable to meet the performance requirements linked to its required support of NHTSA'S VIN Look Up tool. Repeated and lengthy disruptions of MBUSA's service result in the motoring public not being able to access safety critical information about their MBUSA vehicles and/or confusion over whether a safety recall applies to their vehicle . . . In addition, **on numerous occasions MBUSA omitted critical information about the problem for which a recall decision was made, or details about its recall plans.**  Items such as the estimated percentage of its products impacted by a recall concern and information about the expected timing for its recalls campaigns are examples of what was frequently missed.  It provided information only after its campaigns had long since launched to the field, thereby not completing its reporting responsibilities and preventing NHTSA from fully assessing the safety risk involved and frustrating the agency's oversight responsibilities.[25]

---

[24] Ridella, S., *Audit of Safety Recall Campaign Administration (AQ18-004)*, NHTSA (Oct. 22, 2018), file://schlesingerlaw.local/DFSShare/Folder%20Redirection/Sarah/Documents/INIM-AQ18004-73958.pdf.

[25] *Id.* (emphasis added).

77.     Far from the best, Mercedes-Benz has differentiated itself by its pattern of announcing a recall and then doing barely anything about it.  Its customers are left to fend for themselves with the unsettling knowledge that their vehicles may be highly dangerous.

## CLASS ACTION ALLEGATIONS

### A.  Class Definitions

78.     The proposed Nationwide Class includes all persons and entities that purchased or leased a Class Vehicle in the United States, including its territories. Plaintiffs also propose a separate State Sub-Class for Florida, which includes all persons and entities that purchased or leased a Class Vehicle in the State of Florida.

79.     The Class Vehicles include: 2009 Mercedes-Benz GL320BTC; 2007-2008 Mercedes-Benz GL320CDI; 2010-2012 Mercedes-Benz GL350BTC; 2007-2012 Mercedes-Benz GL450; 2008-2012 Mercedes-Benz GL550; 2009 Mercedes-Benz ML320BTC; 2007-2008 Mercedes-Benz ML320CDI; 2006-2011 Mercedes-Benz ML350; 2010-2011 Mercedes-Benz ML350BTC; 2010-2011 Mercedes-Benz ML450H; 2006-2007 Mercedes-Benz ML500; 2008-2011 Mercedes-Benz ML550; 2007-2011 Mercedes-Benz Mercedes-AMG ML63; 2009 Mercedes-Benz R320BTC; 2007-2008 Mercedes-Benz R320CDI; 2006-2012 Mercedes-Benz R350; 2010-2012 Mercedes-Benz R350BTC; 2006-2007 Mercedes-Benz R500; 2008 Mercedes-Benz R550; 2007 Mercedes-Benz Mercedes-AMG R63.[26]

80.     Excluded from the Classes are: Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

---

[26] Plaintiffs reserve the right to supplement or amend the Class Vehicles after conducting discovery and further investigation.

81.     The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

82.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

83.     Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery and further investigation.

### B. Class Action Requirements

84.     <u>Numerosity</u>:  Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs are informed and believe, based on information available regarding the nationwide sales and recalls of certain Class Vehicles, there are hundreds (if not thousands) of Class members.  The precise number of Class members is unknown to Plaintiffs but may be ascertained from the Defendants' records and vehicle registration records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and published notice.

85.     <u>Commonality and Predominance</u>:  Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether Defendants engaged in the conduct alleged herein;

b.      Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

c.      Whether the Class Vehicles have and were sold with the Brake Defect;

d.      Whether a reasonable consumer would consider the Brake Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

e.      Whether the brake booster defect constitutes a safety defect;

f.      Whether Defendants knew of the Brake Defect but failed to timely disclose the problem and its consequences to Plaintiff and Class members;

g.      Whether Defendants knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Class;

h.      Whether Defendants omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiffs and Class members;

i.      Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

j.      Whether Defendants have engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with the Brake Defect, and any related statutes asserted herein;

k.      Whether Plaintiffs and Class members overpaid for their Class Vehicles;

l.      Whether Plaintiffs and Class members suffered out-of-pocket losses because of the Brake Defect;

m.      Whether Defendants owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

n.      Whether Defendants breached their duties to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

o.      Whether Defendants breached their duties to Plaintiff and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

p.    Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

q.    Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

r.    Whether Plaintiff and Class members are entitled to damages and other monetary relief and, if so, in what amount; and

s.    Whether Plaintiff and the Class are entitled to treble damages and/or punitive damages or other relief.

86.    <u>Typicality</u>:  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured by Defendants' wrongful conduct as described herein.  Plaintiff and the Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.  Plaintiffs' claims are based on the same legal theories as the claims of the Class members.

87.    <u>Adequacy</u>:  Federal Rule of Civil Procedure 23(a)(4): Plaintiffs' and their counsel are adequate because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

88.    <u>Superiority</u>:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against

Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

## TOLLING OF THE STATUTE OF LIMITATIONS

89.     Defendants have known of the Brake Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints made as early as September 13, 2007 to Defendants' network of exclusive dealers and NHTSA, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints. Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles.

90.     Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem. In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Mercedes-Benz is obligated to do.

91.     Defendants had a duty to disclose the Brake Defect to consumers and NHTSA. Contrary to this duty, Mercedes-Benz concealed the Brake Defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiff and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiff and the Class members about the truth about the Class Vehicles.

92.    Because of the highly technical nature of the Brake Defect, Plaintiff and Class members could not independently discover it using reasonable diligence.  Before the retention of counsel and without third-party experts, Plaintiff and Class members lack the necessary expertise to understand the Brake Defect.

93.    Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

**CAUSES OF ACTION**

<u>**COUNT I**</u>
**Breach of Express Warranty**
*Fla. Stat. § 672.313*
**(on Behalf of the Nationwide Class and the Florida Sub-Class)**

94.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

95.    Defendants are and were at all relevant times with respect to motor vehicles were "merchants" and/or "sellers" as defined by Fla. Stat. § 672.104(1) and Fla. Stat. § 672.103(1)(d). Plaintiff and the Class were "buyers" as defined by Fla. Stat. § 672.103(1)(a).

96.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

97.    Defendants provided Plaintiff and the Class with one or more express warranties in connection with the purchase or lease of the Class Vehicles. Under the warranties provided to Plaintiff and the Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

98.     Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects.   These statements helped conceal the existence of the brake booster defect and its corresponding safety risk from Plaintiff and the Class.

99.     Plaintiff and the class have had sufficient dealings with Defendants or their agents and authorized dealerships to establish privity of contract between Defendants and Plaintiffs. Nonetheless, privity is not required here because Plaintiff and each member of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

100.     Defendants' affirmation of fact and promise in Defendants' marketing and signage became part of the basis of the bargain between Defendants and Plaintiff and Class members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

101.     Defendants breached these warranties by selling and leasing Class Vehicles with the Brake Defect, requiring repair or replacement.

102.     Because of the Brake Defect, the Class Vehicles are not reliable, and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.  Indeed, Mercedes-Benz has explicitly informed owners that it is unsafe to drive their Class Vehicles.

103.     As a direct and proximate cause of Defendants' breach, Plaintiff and Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did

not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the Brake Defect.

104.    Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about the Brake Defect.

105.    The time limits in Defendants' warranties were also unconscionable and inadequate to protect Plaintiff and Class members.  Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in formation and bargaining power existed between Defendants and Plaintiff and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

106.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

107.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed

to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

108.    Plaintiff and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of Defendants' conduct alleged herein.

109.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

110.    Plaintiff and members of the Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

<u>**COUNT II**</u>
**Breach of Implied Warranty of Merchantability**
***Fla. Stat. § 672.314***
**(on Behalf of the Nationwide Class and the Florida Sub-Class)**

111.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

112.    Defendants are and were at all relevant times with respect to motor vehicles were "merchants" and/or "sellers" as defined by Fla. Stat. § 672.104(1) and Fla. Stat. § 672.103(1)(d). Plaintiff and the Class were "buyers" as defined by Fla. Stat. § 672.103(1)(a).

113.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

114.    Plaintiff and the Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

115.    At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

116.    The Class Vehicles with the Brake Defect were not "merchantable" at the time of sale as they were not of "fair average quality within the[ir] description" or "fit for the ordinary purposes for which such goods are used" as is implied by law pursuant to Fla. Stat. § 672.314(2)(b) and (c).

117.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Brake Defect —at the time of sale or lease and thereafter and present an undisclosed safety risk to drivers and occupants.

118.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.  Plaintiff and the Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

119.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here.  At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed

to rectify the situation and/or disclose the defective design.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

120.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Brake Defect.  Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the Class.  Among other things, Plaintiff and the Class did not determine these limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

121.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.

### <u>COUNT III</u>
### Negligent Misrepresentation
### (on Behalf of the Nationwide Class)

122.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

123.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiff and Class members because Defendants knew or should have known of the brake booster defect and the risks associated with the manifestation of the Brake Defect.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either

knew or should have known that the Class Vehicles possessed the brake booster defect and failed to disclose its existence and its corresponding safety hazard.

124.    Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Brake Defect exposing drivers and occupants to safety risks.  Defendants misrepresented that they would remedy any defects under the express warranties but limited their coverage to mechanical defects.  As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

125.    The Brake Defect is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Brake Defect manifests, the driver may experience a partial or total loss of braking capability that may result in death and/or serious bodily injury to the occupants.  During failure, drivers may be shocked, distracted and distressed and be unable to safely operate the Class Vehicles.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents which may result from the manifestation of the Brake Defect.  No reasonable consumer expects a vehicle to contain a defect in design, such as the Brake Defect, that can cause partial or total brake failure with no warning or time to take preventative measures.

126.    Plaintiff and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Brake Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

127.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles with the Brake Defect, Plaintiff and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT IV**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301,** *et seq.*
**(on Behalf of the Nationwide Class)**

128.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

129.    This Court has jurisdiction over claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332.

130.    Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3) as they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.  15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

131.    Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §§ 2301(4)–(5).

132.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

133.    Defendants provided Plaintiff and the other Class members with a written warranty in connection with the purchase or lease of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  As part of these written warranties, Defendants warranted that the Class Vehicles were defect-free and/or would meet a

specified level of performance over a specified period of time that formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

134.    Defendants provided Plaintiff and the other Class members with an implied warranty in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

135.    Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1).  Without limitation, the Class Vehicles share a common design defect in that they contain a defective braking system that could cause partial or complete brake failure and significantly increases the risk death and/or injury to operators, passengers, and the general public.

136.    Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void. Any limitations on the warranties is procedurally unconscionable.  There was unequal bargaining power between Defendants and Plaintiff and the other Class members. Any limitations on the warranties is substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks. Defendants also knew that their express warranties would not cover the Brake Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiff and the Class members.

137.    Plaintiff and each of the other Class members have had sufficient direct dealings with either Defendants or their agents and/or dealerships to establish privity of contract. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Brake Defect.

138.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here.  At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

139.    As a direct and proximate result of Defendants' breach of the written and implied warranties, Plaintiff and Class members sustained monetary damages and other losses in an amount to be determined at trial.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of Class members, seek all damages permitted by law, including actual damages, consequential damages, statutory damages, specific performance, diminution in value of their vehicles, and any other relief as deemed appropriate in an amount to be proven at trial.  In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual

time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class

members in connection with the commencement and prosecution of this action.

## COUNT V
### Fraud by Concealment or Omission
#### (on Behalf of the Nationwide Class)

140.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as

though fully set forth herein.

141.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under

the common law of fraudulent concealment, as there are no true conflicts among various states'

laws of fraudulent concealment.  Defendants are liable for both fraudulent concealment and non-

disclosure.  *See, e.g.,* Restatement (Second) of Torts §§ 550–51 (1977).

142.    Defendants intentionally and knowingly misrepresented and concealed, suppressed

and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiff and Class

members.  Defendants knew, or should have known, that that the Brake Defect in the Class

Vehicles could cause partial or complete loss of braking capability significantly increasing the risk

of collision and serious injury for drivers, occupants, and the general public.

143.    A reasonable consumer would not have expected that the Class Vehicles contain

the Brake Defect.  Defendants knew that reasonable consumers expect that their vehicle have a

fully functional braking system, and would rely on those facts in deciding whether to purchase,

lease, or retain a new or used motor vehicle.  Whether a manufacturer's products are safe and

reliable, and whether that manufacturer stands behind its products, are material concerns to a

consumer.

144.    Defendants ensured that Plaintiff and the Class did not discover this information

through concealing it and misrepresenting the Class Vehicles' braking systems without disclosing

the truth.  Defendants intended for Plaintiff and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

145.    Defendants had a duty to disclose the Brake Defect because:

a.    Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect.  Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class;

b.    Defendants knew the Brake Defect (and its safety risks) was a material fact that would affect Plaintiff's or Class members' decisions to buy or lease Class Vehicles;

c.    Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems, while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class that the Class Vehicles contained the dangerous Brake Defect.  Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiff and the Class, Defendants had the duty to disclose the whole truth.  They did not.

146.    To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiff and the Class, and continue to conceal material information regarding the Brake Defect.  The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and the Class.

147.    Defendants concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's image and cost money.  They did so at the expense of Plaintiff and the Class.  Had they been aware of the Brake Defect in the Class Vehicles, and Defendants' callous disregard for safety,

Plaintiff and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

148. Accordingly, Defendants are liable to Plaintiff and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

149. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiff's and the Class's rights and well-being; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT VI**
**Breach of the Duty of Good Faith and Fair Dealing**
**(on Behalf of the Nationwide Class)**

150. Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

151. All contracts contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

152. A contractual relationship existed between Plaintiff and Class members and Defendants. As alleged herein, Defendants were the designers, manufacturers, distributors, and warrantors of the Class Vehicles. Defendants provided Plaintiffs with both express warranties as alleged herein as well as an implied warranty of merchantability in connection with the purchase or lease of the Class Vehicles. Defendants warranted that Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

153.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class members of the brake booster defect in the Class Vehicles, and failing to repair this defect fully and properly, thereby depriving Plaintiff and Class members of the benefits under the contract.

154.    As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiffs were monetarily damaged, suffering out of pocket costs related to the Brake Defect, loss of use, and diminution of value in the Class Vehicles. Had Plaintiffs and Class members known about the Brake Defect, they would not have purchased or leased the Class Vehicles, or they would have paid less for them.

155.    Defendants acted in bad faith and with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT VII**
**Unjust Enrichment**
**(on Behalf of the Nationwide Class)**

156.    Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

157.    Because of their conduct, Defendants caused damages to Plaintiff and Class members.

158.    Plaintiff and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Brake Defect misrepresentations regarding the Class Vehicles' safety.

159.     As a result of Defendants' fraud and deception, Plaintiff and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

160.     Defendants knowingly benefitted from their unjust conduct.  They sold and leased Class Vehicles equipped with a brake defect for more than what the vehicles were worth, at the expense of Plaintiff and Class members.

161.     Defendants readily accepted and retained these benefits from Plaintiff and Class members.

162.     It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Brake Defect to consumers.  Defendants knowingly limited their warranty coverage and excluded the Brake Defect.  Plaintiff and Class members would not have purchased or leased the Class Vehicles or paid less for them had Defendants not concealed the Brake Defect.

163.     Plaintiff and Class members do not have an adequate remedy at law.

164.     Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiff and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**COUNT VIII**
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
*Fla. Stat. § 501.201, et seq.*
**(on Behalf of the Florida Sub-Class)**

165.     Plaintiff and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

166.    .Plaintiff and the members of the Florida Sub-Class are "consumers" within the meaning of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. § 501.203(7).

167.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

168.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

169.    In the course of their businesses, Defendants failed to disclose and actively concealed the Brake Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

170.    In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles.  Defendants knowingly concealed, suppressed, and omitted material facts regarding the Brake Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and the members of the Florida Sub-Class.

171.    Defendants actively suppressed the fact that the Brake Defect in Class Vehicles presents a safety hazard.  Further, Defendants employed unfair and deceptive trade practices by

denying repairs or replacement of the Brake Defect within a reasonable time in violation of FDUTPA. Defendants also breached warranties as alleged below in violation of FDUTPA.

172.    As alleged above, Defendants knew or should have known of the Brake Defect contained in the Class Vehicles since at least 2009, if not before. Prior to installing the Brake Defect in the Class Vehicles, Defendants engaged in preproduction testing and failure mode analysis. Defendants should have known about the Brake Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Brake Defect.

173.    By failing to disclose and by actively concealing the Brake Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Brake Defect to cause partial or total loss of braking capability as well as the corresponding safety hazard to vehicle occupants.

174.    Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiff and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Brake Defect, which were defective in design and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Brake Defect within their braking systems and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff and the members of the Florida Sub-Class did.

175.     Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiff and members of the Florida Sub-Class.  Defendants knew, or should have known, that the braking systems were defective in design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement.  Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause a partial or total loss of braking capability.  Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

176.     Defendants knew or should have known that their conduct violated the FDUTPA.

177.     Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles with the Brake Defect that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Brake Defect and its corresponding safety hazard.

178.     To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Brake Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles with the Brake Defect. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

179.     Defendants owed Plaintiff and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Brake Defect because Defendants:

a.    Possessed exclusive knowledge of the Brake Defect and its associated safety hazard;

      b.   Intentionally concealed the foregoing from Plaintiff and the members of the Florida Sub-Class; and/or

      c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the members of the Florida Sub-Class that contradicted these representations.

180.   Because Defendants fraudulently concealed the Brake Defect in the braking systems of Class Vehicles, and now that the Brake Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiff and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

181.   Defendants' failure to disclose and active concealment of the Brake Defect in the Class Vehicles are material to Plaintiff and the members of the Florida Sub-Class.  A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports and remedies them.

182.   Plaintiff and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information.  Had Plaintiff and the members of the Florida Sub-Class been aware of the Brake Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff and the members of the Florida Sub-Class either would not have paid as much for their vehicles or would not have purchased or leased them at all. Plaintiff and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

183.   Plaintiff and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present

a continuing risk to Plaintiff, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

184.    As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiff and the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

185.    Plaintiff and the members of the Florida Sub-Class are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat. § 501.2105(1).

186.    Plaintiff and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## REQUEST FOR RELIEF

187.    WHEREFORE, Plaintiff, Individually and on behalf of Illinois Class members, respectfully request the Court enter judgment in their favor and against Defendants as follows:

a. Certification of the proposed State of Illinois Class under Rule 23 of the Federal Rules of Civil Procedure, including appointment of Plaintiffs as class representatives and appointment of Plaintiffs' counsel as Class Counsel;

b. Damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

c. And order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d. An award of reasonable costs and attorney fees; and

e. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

188.    Plaintiffs hereby demand a trial by jury for all claims so triable.


Dated: May 19, 2022                              Respectfully submitted,
                                                 <u>Scott P. Schlesinger</u>

                                                 Scott P. Schlesinger
                                                 Jeffrey L. Haberman
                                                 Jonathan R. Gdanski
                                                 Sarah J. Schultz
                                                 SCHLESINGER LAW OFFICES, P.A.
                                                 1212 SE Third Avenue
                                                 Ft. Lauderdale, FL 33316
                                                 scott@schlesingerlaw.com
                                                 jhaberman@schlesingerlaw.com
                                                 jgdanski@schlesingerlaw.com
                                                 sarah@schlesingerlaw.com
                                                 954-467-8800

                                                 *Attorneys for Plaintiff and the Class*